**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THIERRY NKURUNZIZA,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-2066-J** |
| **WARDEN, DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Thierry Nkurunziza, a noncitizen proceeding pro se,[1] filed a petition seeking a Writ of Habeas Corpus under 28 U.S.C. § 2241. Doc. 1. United States District Judge Bernard M. Jones, II referred this matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C.

[1] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). This Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

§ 636(b)(1)(B), (C). Doc. 3. Respondents filed a response to the petition, Doc. 9, and Petitioner filed a reply, Doc. 10, Ex. 1, at 1-24.[2] So, the matter is at issue.[3]

For the reasons below, the undersigned recommends that the Court **GRANT** the petition in part and order Respondents to release Petitioner on an appropriate order of supervision (OOS).

## I. Factual background and procedural history.

Petitioner is a citizen of Burundi who entered the United States on or around April 20, 2005. Doc. 9, Ex. 3, at 1. Sometime afterward, the Department of Homeland Security (DHS) initiated removal proceedings against Petitioner with the Immigration Court. *See id.* at 2. Petitioner later filed applications for asylum, withholding of removal, and protection under the Convention Against Torture. *See id.* In January 2011,[4] an Immigration Judge (IJ) denied

---

[2] Alongside his reply, Petitioner filed a Motion to Accept Reply as Timely Filed. Doc. 10, at 1-5. On October 16, 2026, the undersigned granted Petitioner's motion and accepted his reply as timely filed. Doc. 14.

[3] On October 7, 2026, the undersigned issued an order requesting an update on Petitioner's detention status, as he no longer appeared on the Government's online detainee locator. Doc. 12. On October 13, 2026, Respondents submitted that Petitioner remains detained and, in August 2026, he had an interview with a representative of the Embassy of the Republic of Burundi. Doc. 13.

[4] Respondents submitted conflicting evidence as to when an IJ ordered Petitioner removed. The BIA's decision and the EOIR Automated Case Information website each state that the IJ denied Petitioner's applications on

Petitioner's applications for immigration relief and ordered him removed to Burundi. *Id.*; *see also id.* Ex. 1, at 1; *Id.* Ex. 2, at 1. Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals (BIA). *See id.* Ex. 1. On August 23, 2012, the BIA denied Petitioner's appeal, making his removal order administratively final. *See id.* at 3; *see also* Doc. 10, Ex. 1, at 4; 8 C.F.R. § 1241.1(a).

On January 25, 2011, ICE released Petitioner subject to an OOS. Doc. 10, Ex. 1, at 25. For nearly fifteen years, Petitioner lived outside of ICE custody as DHS sought to secure his removal. *Id.*

Sometime in 2019, Petitioner reached out to the Burundi consulate to obtain a Burundian passport. *Id.* at 27-28. On April 25, 2019, the Burundi consulate informed Petitioner that he must be physically present in Burundi to obtain a new passport. *Id.* at 27, 30-31.

On December 22, 2025, following a routine check-in, ICE re-detained Petitioner. *Id.* at 26; *see also* Doc. 9, Ex. 3, at 2. On March 10, 2026, ICE ERO

---

January 31, 2011. Doc. 9, Ex. 1, at 1; *see also id.* Ex. 2, at 1. However, in a declaration from Christopher Hudson, a deportation officer working for ICE's Enforcement and Removal Operations (ERO), Deportation Officer Hudson claims that the IJ denied Petitioner's applications on April 6, 2006. *Id.* Ex. 3, at 2. Ultimately, the date of the IJ's order is not dispositive, as the parties do not contest that Petitioner's removal order became administratively final on August 23, 2012.

submitted a travel document application to the Burundi consulate.[5] Doc. 9, Ex. 3, at 2; 10, Ex. 1, at 4. On August 21, 2026, a Burundian representative was scheduled to interview Petitioner. Doc. 9, Ex. 3, at 2; Doc. 13, at 1. Petitioner alleges that this interview never occurred. Doc. 10, Ex. 1 at 1-2, 27.

At some point, Petitioner filed a Motion to Reopen his removal proceedings and requested a stay of removal. *See* Doc. 9, Ex. 1, at 3. On June 30, 2026, the BIA denied Petitioner's motion and denied the stay of removal request as moot. *Id.* at 3-4. On July 30, 2026, Petitioner filed a Motion to Reconsider with the BIA, alongside an Emergency Motion for Stay of Removal.[6] *Id.* Ex. 2, at 2; *see also* Doc. 1, at 3. Petitioner also filed a petition for review of the BIA's decision and made an additional request for a stay of removal before the Tenth Circuit. Doc. 10, Ex. 1, at 15. On or around August 19, 2026, the Tenth Circuit denied Petitioner's motion and stay request. *Id.*

ICE is currently detaining Petitioner at the Diamondback Correctional Facility in Watonga, Oklahoma. *See* Doc. 13, at 1.

---

5 As Petitioner indicates, Respondents' response "does not mention the review" or "identify its outcome[.]" Doc. 10, Ex. 1, at 5; *see also* Doc. 9.

6 The BIA has yet to rule on Petitioner's Motion to Reconsider or Emergency Motion for Stay of Removal, and Petitioner does not allege that the BIA has granted his stay. *See* Doc. 10, Ex. 1, at 15; *see also* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 16, 2026).

## II. Petitioner's claims.

Petitioner claims that: (1) his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been detained past the "six months presumptive limit"; (2) his removal order is not executable because of an outstanding "Motion to Reopen" and "Emergency Stay of Removal" before the BIA and (3) ICE improperly revoked his prior OOS because it failed to notify him of the reasons for revocation. Doc. 1, at 4-5. Additionally, Petitioner concurrently submitted a "Motion for Temporary Restraining Order and Preliminary Injunction," alleging that his release is warranted under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). *Id.* at 6-8.

Petitioner requests that the Court: (1) order his immediate release from custody on an appropriate OOS; and (2) grant a temporary restraining order prohibiting Respondents from removing Petitioner from the United States or the Court's jurisdiction.[7] *Id.* at 8.

---

[7] Petitioner asks in the alternative for the Court to order Respondents to provide him with an individualized bond hearing before a neutral IJ within seven days, at which the Government bears the burden of proof by clear and convincing evidence that his continued detention is justified. Doc. 1, at 5. Because the undersigned recommends granting the petition, the Court should decline to address this claim.

Additionally, in his reply, Petitioner requested additional alternative relief. Doc. 10, Ex. 1, at 22. But the Court need not address allegations first made in a reply brief. *See United States v. Wayne*, 591 F.3d 1326, 1336 n.9

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## IV. Petitioner is entitled to relief under § 1231 and *Zadvydas*.

The parties do not dispute that Petitioner is subject to an administratively final order of removal and that his detention is governed by § 1231. Under § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has the discretion to continue to detain inadmissible or

---

(10th Cir. 2010) (declining to address an argument raised for the first time in a reply brief); *see also Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.") (citation omitted); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (noting that the court "does not ordinarily review issues raised for the first time in a reply brief.").

criminal noncitizens. *Id.* § 1231(a)(6). The "basic purpose" of § 1231 is "assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699.

However, detention of a noncitizen subject to an administratively final order of removal may not be "indefinite," and the Supreme Court set the "presumptively reasonable period of detention" under § 1231(a)(6) at six months. *Id.* at 699, 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"); *Roble v. Pontesso*, 90 F. App'x 334, 336 (10th Cir. 2004) (describing that "[a]s the possibility of removal becomes remote," the purpose of securing a noncitizen's appearance at immigration proceedings "drops out"). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Respondents "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Therefore, under *Zadvydas*, a petitioner has the initial burden to: (1) show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months; and (2) "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.*; *see also Soberanes*, 388

F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable."). If a petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

**A. Petitioner has met his initial burden.**

To satisfy the burden under *Zadvydas*, a petitioner "must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1267-68 (W.D. Okla. 2026) (confirming that Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal"). A petitioner is not required to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702. Rather, a petitioner need only demonstrate that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701.

Here, the undersigned finds that Petitioner has met his initial burden under *Zadvydas*. *Id.* First, because Petitioner has been detained for approximately ten months following an administratively final order of

removal, he has demonstrated that he has been detained past the presumptively reasonable period. *See id.*; *see also* Doc. 9, Ex. 3, at 2.

Second, Petitioner has provided good reasons to believe that there is not a significant likelihood that he will be removed in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. Petitioner's removal order became administratively final on August 23, 2012. *See* Doc. 9, Ex. 1, at 3; Doc. 10, Ex. 1, at 4. More than fourteen years have elapsed since Petitioner's removal order became administratively final, and ICE has failed to secure Petitioner's removal to Burundi or an alternative country. "[T]he passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 828 F. Supp. 3d at 1271; *see also Douglas v. Baker*, 812 F. Supp. 3d 525, 530 (D. Md. 2025) (finding that passage of time coupled with "the absence of any evidence that the government has used that time to advance efforts to remove" the petitioner demonstrates that petitioner's detention was no longer authorized by *Zadvydas*).

Additionally, since detaining Petitioner in December 2025, ICE has still failed to make meaningful progress in securing Petitioner's removal. *See Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1184 (E.D. Cal. 2025) (finding that petitioner satisfied his burden when he alleged that respondents "failed to provide notice of any progress that has been made over the past seven months

to effectuate [petitioner's] removal"); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding that petitioner met his burden by demonstrating, in part, "that ICE has not identified a third country that will accept him").

Further, before his re-detention, Petitioner reached out to the Burundi consulate to renew his Burundian passport. Doc. 10, Ex. 1, at 27, 30. However, the consulate informed Petitioner that he must be physically present in Burundi to renew his passport. *Id.* at 30. According to Mr. Hudson, Petitioner's expired Burundian passport is "not sufficient to use for travel," which suggests that it cannot be used to enter Burundi. Doc. 9, Ex. 3, at 2. The undersigned considers Petitioner's inability to obtain a valid Burundian passport to constitute an "institutional barrier[]" to his removal. *Dusabe*, 2024 WL 5465749, at *3; *Khaliq*, 828 F. Supp. 3d at 1267-68; *see also Gomez v. Mattos*, 817 F. Supp. 3d 1002, 1011 (D. Nev. Nov. 6, 2025) (finding that petitioner met his initial burden in part because he "has identified a barrier preventing him from being repatriated to [his home country.]"). Petitioner's inability to renew his passport from the United States, considered together with the absence of evidence that Burundi has approved another travel document for his removal, supports his showing that significant obstacles to removal remain.

Thus, the undersigned finds that Petitioner has satisfied his initial burden.

**B. Respondents have not rebutted Petitioner's showing.**

Because Petitioner has established good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must provide evidence sufficient "to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, the undersigned finds that Respondents' arguments fail to rebut Petitioner's showing. First, Respondents claim that Petitioner has not argued that he faces "institutional barriers to his repatriation to Burundi or obstacles particular to his removal from the United States[.]" Doc. 9, at 9. However, as discussed above, Petitioner cannot obtain a valid Burundian passport, which creates a significant obstacle to effectuating Petitioner's removal to Burundi. *Id*. Ex. 3, at 2; Doc. 10, Ex. 1, at 27, 30.

Second, Respondents argue that, by filing a Motion to Reconsider and Emergency Stay of Removal with the BIA, Petitioner has engaged in a "review process" that has a "definite termination point," which does not warrant release under *Zadvydas*. Doc. 9, at 10-11 (quoting *Akinsanya v. Blanche*, No. CIV-26-448-J, 2026 WL 1909998, at *3 (W.D. Okla. Jul. 2, 2026)). However, Petitioner has not managed to reopen his removal proceedings, and this

argument fails to address Respondents' failure to make meaningful progress in securing Petitioner's removal to Burundi or an alternative country. *See Vishal*, 811 F. Supp. 3d at 1184; *Trejo*, 2025 WL 2992187, at *5.

Third, Deportation Officer Hudson believes that Petitioner will be removed "on the next available mission" and that ICE has successfully facilitated third-country removals of Burundian nationals in the past. Doc. 9, Ex. 3, at 2. Deportation Officer Hudson also states that on August 21, 2026, a member of the Burundi consulate was scheduled to interview Petitioner to determine whether his travel application may be granted. *Id.*; *see also Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025) (finding that "specific communications between the United States and an identified country" may demonstrate an individual's removal is in the reasonably foreseeable future).

Petitioner alleges that the August 21, 2026 interview did not occur. Doc. 10, Ex. 1, at 1–2, 27. In their subsequent status report, however, Respondents represented that Petitioner participated in an interview with a representative of the Embassy of the Republic of Burundi in August 2026. Doc. 13, at 1. Even accepting Respondents' representation, they have not identified the interview's outcome, established that travel documents have been approved, or provided a concrete timetable for Petitioner's removal.

Other than this interview, Deportation Officer Hudson does not explain why Petitioner specifically is likely to be removed in the reasonably foreseeable future. Deportation Officer Hudson only provides "conclusory and threadbare" allegations that Petitioner will be removed "on the next available mission" without further detail. *Messay v. Gantt*, No. CIV-26-896-J, 2026 WL 2351423, at *3 (W.D. Okla. June 30, 2026), *adopted*, No. CIV-26-896-J, 2026 WL 2019967 (W.D. Okla. July 13, 2026). That the Government may have removed Burundian citizens does not satisfy Respondents' burden. *See, e.g.*, *Rajigah v. Conway*, 268 F. Supp. 2d 159, 167 (E.D.N.Y. 2003). General efforts do not provide any "conclusive evidence" that Petitioner will be removed in the near future. *Id.*; *see also Hanifi v. Figueroa*, No. CIV-26-1229-D, 2026 WL 2620554, at *5 (W.D. Okla. Sept. 4, 2026) (finding that general statistics are insufficient to rebut a petitioner's showing because such figures do not "provide . . . evidence of progress . . . made towards removal of Petitioner himself") (internal citations omitted); *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *5 (W.D. Okla. Mar. 6, 2026) ("[A] general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years ... does not satisfy the ... determination of a significant likelihood that *the* alien may be removed") (internal quotation marks omitted); *Shamma v. Raycraft*, No. 26-CV-492, 2026 WL 598451, at *2 (W.D. Mich. Mar. 4, 2026)

(concluding that the "general, speculative statement" by respondents that "Israel will take stateless subjects and transfer to Palestine via the West Bank" was not sufficient to meet their burden where respondents do not indicate Israel had agreed to take action for petitioner and, if so, respondents had not provided any timeline for his removal).

In sum, Respondents have not provided evidence sufficient to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. So, the undersigned recommends that the Court grant Petitioner's petition and order his immediate release subject to an appropriate OOS. *See, e.g.*, *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *5-6 (W.D. Okla. Mar. 20, 2026) (ordering the petitioner's immediate release "subject to an appropriate Order of Supervision" after finding a due process violation based on the petitioner's prolonged detention with no reasonable likelihood of removal to Vietnam).

## V. Recommendation and notice of right to object.

The undersigned recommends that the Court grant the petition insofar as it seeks release under § 1231 and *Zadvydas* and decline to reach Petitioner's remaining grounds for release. The undersigned recommends that the Court

order his immediate release subject to an appropriate OOS.[8] The Court should further order Respondents to certify compliance by filing a status report within five business days of the Court's order.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by November 6, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[9] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation

---

[8] Given the recommended statutory relief, the undersigned recommends that the Court decline to reach the remainder of Petitioner's claims. Additionally, if the Court adopts this recommendation and orders Petitioner's release, the Court should deny the pending motion for a temporary restraining order and preliminary injunction as moot, Doc. 1, at 6, 8.

[9] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance–particularly where strict application would undermine the habeas review process.").

disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 28th day of October, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE